UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ASHKAHN PAJOOHI

                                    Plaintiff,

            -against-

CITY OF NEW YORK, POLICE OFFICER RICHARD DENESE #12075; POLICE OFFICER SEAN SALVATORE, SHIELD 12816, SERGEANT SUDESH RAMJATTAN, SHIELD 2407

                                    Defendants.
------------------------------------------------------------------------ x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**14CV1937 (ILG) (JO)**

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a July 21, 2013 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, trespass, false arrest, excessive force, and malicious prosecution.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution

1

of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Police Officer Richard Danese, Police Officer Sean Salvatore, and Sergeant Sudesh Ramjattan ("the officers"), were, at all times here relevant, law enforcement officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, the officers were involved in the decision to arrest plaintiff without probable

cause or failed to intervene in the actions of theri fellow officers when they observed them arresting and assaulting plaintiff without probable cause. The officers are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

11. Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

12. On July 21, 2013, Mr. Pajoohi was inside his home at 48 Madison St., Brooklyn, NY with his wife and young daughter. At approximately 10:30PM, Mr. Pajoohi awoke to the sound of banging on his front door. Frightened, Mr. Pajoohi instructed his family to stay in their rooms and he walked to his front door.

13. The officers had repeatedly kicked the front door causing damage to the door and the chain locks. Mr. Pajoohi slowly opened his front door and observed two uniformed police officers. The officers angrily demanded entry into his home. Mr. Pajoohi explained that everything was fine and his family was sleeping. The officer told Mr. Pajoohi that if he didn't allow them entry he would "kick his teeth in".

14. The defendant officer than forced his way into the home by pushing Mr. Pajoohi, grabbing his arms and slamming his face against the wall. Mr. Pajoohi was

stunned and frightened. He began calling to his wife for help. Without explanation or cause, the officer again slammed Mr. Pajoohi into the wall and handcuffed him. He was then forcibly removed from his home and placed in a police vehicle. No illegal substance or contraband was ever discovered in Mr. Pajoohi's possession, in his vicinity or inside his home.

15. Mr. Pajoohi was transported to the 79th precinct where he was searched, fingerprinted and photographed. Approximately twenty four hours later, Mr. Pajoohi was released from Central Booking. The Kings County District Attorney declined to prosecute the case.

16. As a result of the officers' assault, Mr. Pajoohi sustained swelling and bruising on his arms and legs. He suffered extreme emotional trauma from the officers forceful and unjustified entry into the home where his wife and daughter slept, form the physical attack and from the many hours spent incarcerated without explanation.

17. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

18. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

19. As a direct and proximate result of the acts of defendants, plaintiff suffered the

following injuries and damages:

 a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

 b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

 c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

 d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

 e. Physical pain and suffering;

 f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

 g. Loss of liberty.

FIRST CAUSE OF ACTION
42 U.S.C. § 1983

20. The above paragraphs are here incorporated by reference.

21. Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure, excessive force, malicious prosecution and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under 42 U.S.C. §1983.

22. Plaintiff has been damaged as a result of defendants' wrongful acts.

SECOND CAUSE OF ACTION
Municipal Liability 42 U.S.C. §1983

23. The above paragraphs are here incorporated by reference.

24. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

25. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

26. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of his police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of his fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

27. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen

6

complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

28. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Commissioner Kelly has done on many occasions.

29. Further, the City has no procedure to notify individual officers or his supervisors of unfavorable judicial review of his conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated his law department from the discipline of police officers, so that

civil suits against police officers for actions taken in his capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

30. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

31. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

### THIRD CAUSE OF ACTION
Assault

32. The above paragraphs are here incorporated by reference.

33. Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and offensive touching.

34. Plaintiff was damaged by defendants' assault.

### FOURTH CAUSE OF ACTION
Battery

35. The above paragraphs are here incorporated by reference.

36. Defendants engaged in and subjected plaintiff to immediate harmful and offensive touching and battered him.

37. Plaintiff was damaged by defendants' battery.

### FIFTH CAUSE OF ACTION
False Arrest and False Imprisonment

38. The above paragraphs are here incorporated by reference.

39. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

40. Defendants intended to confine plaintiff.

41. Plaintiff was conscious of the confinement and did not consent to it.

42. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

### SIXTH CAUSE OF ACTION
Trespass

43. All preceding paragraphs are here incorporated by reference.

44. On the date of this incident, plaintiff and his family resided at 48 Madison St., Brooklyn, NY. Defendants voluntarily and intentionally entered the home of plaintiff without his consent.

45. As a result of this illegal trespass without a warrant, plaintiff was damaged.

### SEVENTH CAUSE OF ACTION
Negligent Hiring and Retention

46. The above paragraphs are here incorporated by reference.

47. Defendant officers had a bad disposition and the City knew or should have known of facts, including the arrest of defendant Danese for acts he committed while on duty and his subsequent plea of guilty to disorderly conduct, that would have led reasonable and prudent people to further investigate the defendant officers' bad dispositions through the hiring and retention process.

48. Defendants knew or should have known that their failure to investigate defendant officers' bad dispositions would lead to plaintiff's injuries.

49. Defendants were negligent in their hiring and retaining the officers involved in this case in that they knew or should have known of the officers' propensity to use excessive force and to make false arrests.

### EIGHTH CAUSE OF ACTION
Respondeat Superior

50. The preceding paragraphs are here incorporated by reference.

51. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

52. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:

      Brooklyn, New York
      March 24, 2014               Respectfully yours,

TO:

      City of New York
      Office of Corporation Counsel
      100 Church Street
      New York, NY  10007         By: Andrew B. Stoll (AS8808)
                                                 Stoll, Glickman & Bellina, LLP
      Detective Robert Danese         Attorneys for Plaintiff
      79th Precinct                         475 Atlantic Ave. Fl.3
      263 Tompkins Avenue            Brooklyn, NY  11217
      Brooklyn, NY, 11216-1220        (718) 852-3710 x101

      Police Officer Sean Salvatore,
      Shield 12816
      79th Precinct
      263 Tompkins Avenue
      Brooklyn, NY, 11216-1220

      Sergeant Sudesh Ramjattan, Shield 2407
      79th Precinct
      263 Tompkins Avenue
      Brooklyn, NY, 11216-1220